**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MUSKET CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-11-444-M |
| ) | |
| STAR FUEL OF OKLAHOMA, LLC, ) | |
| LINCOLN O. CLIFTON, ) | |
| DAVID A. SELPH, and ) | |
| MARK LUITWIELER, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court are defendants Star Fuel of Oklahoma, LLC ("Star Fuel") and Mark Luitwieler's ("Luitwieler") Joint Motion to Quash Subpoena and Joint Motion for Protective Order, both filed August 28, 2012. On September 5, 2012, plaintiff Musket Corporation ("Musket") filed its response. Based upon the parties' submissions, the Court makes its determination.

In this case, Musket has alleged that Luitwieler, its former employee, knowingly stole its confidential, proprietary, and trade secret information and subsequently used this information in connection with his work at Star Fuel. In April 2010, the parties negotiated and approved an Agreed Protective Order, in which the parties agreed to appoint an independent forensic examiner ("IFE") to "forensically mirror and examine" certain computer devices to determine whether any of Musket's documents were located on those devices, and if so, to determine certain user activity relating to those documents. The Agreed Protective Order also requires the examination of Luitwieler's personal computer(s) should the IFE be unable to confirm that these computer(s) were never used to access the IDrive Account. Further, to protect against disclosure of attorney client communications, the Agreed Protective Order provided that the IFE would exclude from his

examination any and all documents and communications sent to or received from the law firm of Fellers Snider, Holladay & Chilton, PLLC, and Mark Singer.

On January 6, 2012, pursuant to the terms of the Agreed Protective Order, Luitwieler delivered to the IFE for examination a personal laptop from his home that had been used by him and his wife, Michele Luitwieler. Prior to conducting a full forensic examination of this laptop, the IFE conducted a limited search for files with MD5 hash values exactly matching the MD5 hash values for the identified Musket documents believed to have been stolen by Luitwieler. The IFE's limited search established that the laptop contained 718 files that exactly matched files identified in the list of Musket documents alleged to have been stolen by Luitwieler. The IFE, however, has not been allowed to conduct a full forensic examination of the laptop.

On August 27, 2012, Star Fuel received a subpoena dated August 24, 2012 from Musket to Calvin Weeks, the IFE, commanding that Mr. Weeks produce the hard drive from the laptop that Luitwieler had delivered to the IFE pursuant to the Agreed Protective Order for forensic inspection and examination by Musket. The subpoena requested Mr. Weeks' compliance by August 29, 2012, the date of his continued deposition. Star Fuel and Luitwieler now move this Court to quash Musket's subpoena issued to Mr. Weeks and for a protective order forbidding compliance with Musket's subpoena issued to Mr. Weeks.

First, Star Fuel and Luitwieler contend that the subpoena was issued in contravention of the Agreed Protective Order. Specifically, Star Fuel and Luitwieler contend that the Agreed Protective Order provides that all imaged data would be sealed from inspection until the parties agree or the Court orders that the copies can be destroyed or inspected. Because Musket did not confer with Star Fuel and Luitwieler and reach an agreement and did not seek an order from the Court, Star Fuel and

Luitwieler assert that Musket did not comply with the Agreed Protective Order and the subpoena should be quashed. Musket, on the other hand, contends that the Agreed Protective Order does not prohibit it from seeking the production of the laptop through the subpoena it issued.

The preamble of the Agreed Protective Order provides: "nothing in this Order shall constitute a waiver by any party of its right to seek discovery of, or to compel the production of, any document or electronically stored information." Agreed Protective Order at 2. The Agreed Protective Order further provides:

> 13. The Independent Forensic Expert will retain forensic copies of all imaged data and Musket related data provided to Musket, sealed from inspection until the Parties agree or the Court orders that the copies can be destroyed or inspected.
>
> 14. Nothing in this Order shall be construed to waive any Parties' right to seek a Court Order allowing them to inspect and review the contents of any computer hard drive(s), server(s), or access device(s). Nothing in this Order shall be construed as a waiver of any Parties' right to object to any such application.

Agreed Protective Order at p. 9, ¶¶ 13,14. While the preamble and paragraphs 13 and 14 of the Agreed Protective Order appear to be somewhat contradictory (the preamble noting that a party's right to seek discovery of electronically stored information is not waived and paragraphs 13 and 14 noting that either the parties must agree or a court order be obtained prior to any inspection of any computer hard drive), the Agreed Protective Order contains a paragraph specifically addressing Luitwieler's personal computer(s). That paragraph provides:

> If, upon examining the materials produced by Pro Softnet pursuant to the IDrive Subpoena, the Independent Forensic Expert determines that Luitwieler's personal computer(s) was/were used to access the IDrive Account, then Luitwieler agrees to provide those personal, non-Star owned computer(s) that have been used to access the IDrive Account to the Independent Forensic Expert to forensically mirror

>and examine same in order to determine, at Defendant's expense, whether any Musket Documents from the IDrive Account were created, modified, viewed, saved, printed, received, forwarded, uploaded, downloaded, transmitted or otherwise accessed by those personal computer(s).  If the Independent Forensic Expert has found no indication that Luitwieler's personal computer(s) was/were used to access the IDrive Account but cannot conclusively determine that Luitwieler's personal computer(s) was/were never used to access the IDrive Account, then Luitwieler agrees to provide those personal, non-Star owned computer(s) he has used since September 1, 2008 to the Independent Forensic Expert to forensically mirror and examine same in order to determine, at Plaintiff's expense, whether any Musket Documents from the IDrive Account were created, modified, viewed, saved, printed, received, forwarded, uploaded, downloaded, transmitted or otherwise accessed by those personal computer(s). <u>Nothing contained in this paragraph shall be construed to waive or limit Musket's right to seek discovery of, or Defendants' right to object to discovery of, a mirror image of Luitwieler's personal hard drive(s) to the extent relevant to Musket's claims and defenses or if it is later discovered that spoliation has occurred.</u>

Agreed Protective Order at p. 7-8, ¶10 (emphasis added).  The Court finds that based upon the last sentence of paragraph 10, Musket's right to seek discovery of a mirror image of Luitwieler's personal hard drive(s) is not limited as long as said discovery is relevant to Musket's claims and defenses.[1]  Further, the Court finds that because paragraph 10 specifically addresses Luitwieler's personal hard drive(s), paragraph 10, rather than paragraphs 13 and 14, controls Musket's discovery rights in relation to the laptop at issue.

Additionally, the Court finds that Musket has clearly shown that the mirror image of the hard drive of the laptop is relevant to Musket's claims regarding the misappropriation of its trade secrets.  The IFE identified 718 files on the laptop that exactly matched files on the list of Musket documents allegedly stolen by Luitwieler.  Further examination of the hard drive of the laptop would allow it

---

[1] Musket's right to seek discovery is also not limited if it is later discovered that spoliation has occurred.

to be determined whether the hard drive contains other files that are modified versions of Musket's documents that would not match the MD5 hash values of the Musket documents because they are not exact duplicates. The hard drive of the laptop, therefore, would be relevant to the issue of whether the Musket documents were modified or otherwise used by Luitwieler and/or Star Fuel.

Accordingly, the Court finds that the subpoena was not issued in contravention of the Agreed Protective Order and should not be quashed on that basis.

Second, Star Fuel and Luitwieler contend Musket's belated issuance of the subpoena inhibits their trial preparation and will delay the trial of this case. Star Fuel and Luitwieler assert that Musket's inspection of the hard drive, if allowed, would undoubtedly lead to additional opinions by its retained expert witnesses, who, in turn, would have to submit supplemental disclosures. Star Fuel and Luitwieler further assert that the additional disclosures would require an additional round of discovery and depositions. Star Fuel and Luitwieler state that trial is scheduled to begin in October and to allow this discovery would unnecessarily lengthen the discovery process and divert the parties' and this Court's attention from the post-discovery aspects of trial preparation to continued involvement in belated discovery issues, which are non-dispositive to this proceeding.

Musket, on the other hand, contends that compliance with the subpoena will not delay trial preparation or otherwise impact the trial date. Specifically, Musket asserts that its computer forensic expert could complete its examination of the requested hard drive (or those portions of the hard drive that the IFE is allowed to produce) within five days of the date of production and to the extent this examination disclosed new evidence relevant to Musket's claims, Musket's designated expert could supplement his written report accordingly. Musket further contends that Star Fuel has not provided

any evidence that the production and/or examination of the laptop would take any longer for its own designated experts.

Having carefully reviewed the parties' submissions, the Court finds that compliance with the subpoena, with Court imposed deadlines for any supplementation of expert reports, will not substantially delay trial preparation and will not otherwise impact the trial date. In light of the importance and clear relevance of this evidence to Musket's claims regarding the misappropriation of its trade secrets, the Court finds that this slight additional time spent on discovery with no impact on the trial date does not warrant quashing the subpoena at issue.

Finally, Star Fuel and Luitwieler contend that Musket's subpoena seeks to access documents in a manner to circumvent the requirements of Federal Rule of Civil Procedure 34. Star Fuel and Luitwieler further contend that Musket used the Rule 45 subpoena to circumvent the discovery deadline in this case. Musket, on the other hand, contends that both the plain language of Federal Rule of Civil Procedure 45 and the applicable case law interpreting that rule indicate that Musket is entitled to issue a subpoena on the IFE requesting him to produce the hard drive of the laptop which was within his possession, custody, and control.

Having carefully reviewed the parties' submissions and the case law, the Court finds that Musket's Rule 45 subpoena was proper. Mr. Weeks, the IFE, is a non-party who is in possession of the hard drive of the laptop at issue. "A person seeking access to records through the issuance of a subpoena often has the subpoena served on the individual who has possession of the documents and the court has found no requirement that the subpoena be served on the person who owns the documents." *Mattie T. v. Johnston*, 74 F.R.D. 498, 502 (N.D. Miss. 1976) (citing *Couch v. United States*, 409 U.S. 322 (1973)). Further, because Mr. Weeks is not a party to this action, the Court

finds that the appropriate discovery method would be a Rule 45 subpoena and that although it is Luitwieler's laptop, Rule 34 would not apply in this situation. Finally, the Court finds that Star Fuel and Luitwieler have not shown that Musket issued the subpoena in order to circumvent the requirements of Rule 34 or to circumvent the discovery deadline in this case. Accordingly, the Court finds the subpoena should not be quashed on this basis.

However, in order to protect any attorney-client privileged documents, any confidential Star Fuel documents, and any personal or confidential information regarding Luitwieler, the Court finds that the subpoena should be limited in its scope. Specifically, the Court finds that Mr. Weeks should be instructed to exclude any attorney-client privileged documents, as referenced in paragraph 8 of the Agreed Protective Order, any Star Fuel documents, and any personal or confidential information regarding Luitwieler.

Therefore, for the reasons set forth above, the Court DENIES Star Fuel and Luitwieler's Joint Motion to Quash Subpoena [docket no. 177], GRANTS IN PART and DENIES IN PART Star Fuel and Luitwieler's Joint Motion for Protective Order [docket no. 178], and ORDERS Mr. Weeks to produce for forensic inspection and examination a mirror image of the "Hitachi hard drive from Michele Luitwieler laptop" also described as Item #DC39550000697 in his Hash Library Search Report dated April 11, 2012, excluding any attorney-client privileged documents, as referenced in paragraph 8 of the Agreed Protective Order, any Star Fuel documents, and any personal or confidential information regarding Luitwieler. Mr. Weeks shall produce the mirror image of the hard drive within five (5) days of the date of this Order, and Musket's expert and Star Fuel's experts

shall submit any supplements to their expert reports within seven (7) days of the date Mr. Weeks produces the mirror image of the hard drive.

**IT IS SO ORDERED this 11th day of September, 2012.**

/s/ Vicki Miles-LaGrange
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE