**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MUSKET CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-11-444-M |
| ) | |
| STAR FUEL OF OKLAHOMA, LLC; ) | |
| LINCOLN O. CLIFTON; ) | |
| DAVID A. SELPH, and ) | |
| MARK LUITWIELER, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is plaintiff's Emergency Motion for Discovery Conference, filed September 17, 2012. On September 19, 2012, defendant Star Fuel of Oklahoma, LLC ("Star Fuel") filed its response, and on September 20, 2012, plaintiff Musket Corporation ("Musket") filed its reply. Also before the Court is the independent forensics expert Calvin Weeks' ("Weeks") Motion to Quash Subpoena of August 24, 2012 to the IFE, Request for Protective Order, and Brief in Support, filed September 17, 2012. On September 19, 2012, Star Fuel filed its response, and on September 20, 2012, Weeks filed his reply. Based upon the parties' submissions, as well as the prior briefing on the issue of the August 24, 2012 subpoena to Weeks, the Court makes its determination.

Musket issued a subpoena dated August 24, 2012 to Weeks commanding him to produce the hard drive from the laptop defendant Mark Luitwieler ("Luitwieler") had delivered to Weeks pursuant to the Agreed Protective Order in this case for forensic inspection and examination by Musket. On August 28, 2012, Star Fuel and Luitwieler filed a Joint Motion to Quash Subpoena and a Joint Motion for Protective Order. On September 11, 2012, the Court entered an order denying the Joint Motion to Quash Subpoena, granting in part and denying in part the Joint Motion for

Protective Order, and ordering Weeks to produce for forensic inspection and examination a mirror image of the "Hitachi hard drive from Michele Luitwieler laptop," excluding any attorney-client privileged documents, as referenced in paragraph 8 of the Agreed Protective Order, any Star Fuel documents, and any personal or confidential information regarding Luitwieler.[1]  The Court further ordered Weeks to produce the mirror image within five (5) days of the date of the Order.

In its September 11, 2012 Order, the Court specifically found that compliance with the subpoena would not substantially delay trial preparation and would not otherwise impact the trial date.  *See* September 11, 2012 Order at 6.  This finding was based upon the statements made in Musket's response to the joint motions and the resulting impression made from those statements that production of the copy of the hard drive from Weeks, as well as any review of the hard drive by the parties' experts, would not take long to accomplish.  Based upon the recent filings in this case, however, such impression was far from realistic.

As a result, Weeks has filed a motion to quash the subpoena and Musket has filed an emergency motion for discovery conference to discuss certain issues preventing Weeks from complying with the Court's September 11, 2012 Order.  According to Weeks, it is impossible to comply with the deadline set forth in the Order and he would need until midnight October 5, 2012 to make the required production.[2]  Because this case is set on the Court's October 2012 trial docket,

---

[1] It has now been brought to the Court's attention that the Court did not use the technically correct terminology when it ordered the production of a "mirror image" that excluded certain items.  As the Court believes was clear from a review of its entire order, what the Court was ordering was the production of a copy of the hard drive with certain items excluded.

[2] The Court would note that once Weeks produced the copy of the hard drive, the parties' experts would still need time to review the copy produced.

and trial is less than three weeks away, Musket is seeking guidance from the Court as to how Musket can receive the relevant information and data from the laptop hard drive in a timely manner.

One proposal suggested by Musket is for Weeks to produce a mirror image of the entire hard drive directly to the parties' respective computer experts for examination. Under this proposal, Musket states that the entirety of the hard drive would be marked "Attorney's Eyes Only," to ensure that no confidential information is shared with either Musket or Star Fuel. Further, Musket proposes that the parties' computer experts would be prohibited from sharing any data or information with counsel until the potentially relevant information is identified, and the opposing party is provided a three (3) day period to determine whether the potentially relevant information contains Star Fuel's confidential information and/or Luitwieler's personal or confidential information.

Direct inspection of an opponent's hard drive is not routine and may be justified only in certain circumstances. The advisory committee notes to the 2006 amendment to Federal Rule of Civil Procedure 34(a) provides, in pertinent part:

> The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34(a) advisory committee notes to 2006 amendment. Further, the majority of courts that have allowed inspection of an opponent's hard drive only allow such inspections under specific protocols that would preserve claims of attorney-client privilege and protection of the confidentiality of personal information located on the hard drives that is not related to the claims and defenses or the subject matter of the lawsuit. *See, e.g., White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong*

*Learning, Inc.*, No. 07-2319-CM, 2009 WL 722056, at *8 (D. Kan. March 18, 2009); *In re Honza*, 242 S.W.3d 578, 582 (Tex. App. 2008).

Having reviewed all of the submissions in this matter, the Court finds that Musket's proposal does not provide adequate protection for any privileged or confidential information contained on the hard drive. It is likely that confidential communications and matters entirely extraneous to the present litigation, as well as privileged communications concerning the very issues in this case, may be exposed to Musket's expert, a paid representative of Musket, Star Fuel and Luitwieler's opposing party. Due to the nature of the information, the Court finds that Musket, even if only through its expert, should not have access to the entire hard drive without Star Fuel and Luitwieler first having an opportunity to object to certain information being produced. Additionally, while various allegations have been made regarding Star Fuel's conduct in this case, the Court finds that those allegations are not sufficient to warrant allowing Musket to have access to the entire hard drive.

Therefore, the Court must determine whether Musket should still be able to obtain the relevant information from the hard drive in light of the amount of time it would take Weeks to produce a copy of the hard drive with the proper exclusions of information. In light of the upcoming trial, the Court finds Weeks' proposed production date of midnight on October 5 is simply too late. The Court further finds that any deadline prior to October 5 would be an undue burden on Weeks, a non-party to this case, and, thus, would be unacceptable. The Court also finds that there is no other alternative that would allow production any more timely.

Additionally, the Court finds the predicament Musket finds itself in – needing to discover potentially relevant information but there not being adequate time before trial to do so – is a predicament it created itself. The Court is well aware of the blame Musket has placed on Star Fuel

and the accusations it has made regarding Star Fuel's conduct causing the delay in the production of this information. However, Musket has been aware of the October trial date, as well as the September 1, 2012 discovery deadline, for some time. Additionally, Musket would have been aware of the potentially relevant information on the Luitwieler laptop since at least April 2012 when Weeks, in his report, identified 718 files on the laptop that exactly matched files on the list of Musket documents allegedly stolen by Luitwieler. Musket inexplicably waited until August 24, 2012 to subpoena Weeks to produce a mirror image of the hard drive of the laptop. Even if Star Fuel was causing delay, Musket could have, and should have, brought this matter to the Court's attention at an earlier time, one which would have allowed sufficient time for resolution as well as production with the necessary protocol put in place to protect privileged and confidential information.[3] Accordingly, the Court finds that it is simply too late for Musket to obtain this information.

Therefore, for the reasons set forth above, the Court DENIES plaintiff's Emergency Motion for Discovery Conference [docket no. 196], GRANTS Weeks' Motion to Quash Subpoena of August 24, 2012 to the IFE [docket no. 198], QUASHES the Subpoena Duces Tecum issued on August 24, 2012 to Weeks, and FINDS Weeks' Request for Protective Order [docket no. 198] is now MOOT.

**IT IS SO ORDERED this 21st day of September, 2012.**

*[Signature]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]As the court file shows, the parties have never been reluctant to bring discovery disputes to this Court for resolution, and the Court finds no reason why Musket would have been reluctant to bring this issue to this Court sooner.