**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MUSKET CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-11-444-M |
| ) | |
| STAR FUEL OF OKLAHOMA, LLC, ) | |
| LINCOLN O. CLIFTON, ) | |
| DAVID A. SELPH, and ) | |
| MARK LUITWIELER, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is plaintiff's Motion to Exclude Expert Testimony of Louis S. Scharringhausen, filed September 4, 2012. On September 26, 2012, defendants Star Fuel of Oklahoma, LLC, Lincoln O. Clifton, and David A. Selph ("Defendants") filed their response, and on October 3, 2012, plaintiff Musket Corporation ("Musket") filed its reply. Based upon the parties' submissions, the Court makes its determination.

Musket moves, pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rules of Civil Procedure 26 and 37, to exclude the testimony of Louis S. Scharringhausen ("Scharringhausen"), Defendants' computer forensic expert. While Musket seeks to exclude the entirety of Scharringhausen's testimony, in its motion, Musket specifically references the following three opinions:

1) "[T]here is no evidence that suggests usage of any claimed 'Musket Document' not rightly in the possession of Star Fuel through prior business dealings with Musket."

2) Luitwieler's organization of Musket Documents on his Star Fuel laptop, and the activity resulting in changes to the modification dates of those files, "is consistent with document

>   collection activity performed in relation to document discovery requests . . . ."
>
> 3) The near simultaneous access to the IDrive Account from two Star Fuel IP addresses located nearly 350 miles away "is most likely the result of Luitwieler logging into IDrive through the Star Fuel VPN, which has an Overland Park, KS internet facing address, and then from his home internet address in Oklahoma 80 minutes later."

Expert Report of Louis Scharringhausen at 6-7.

Federal Rule of Evidence 702 governs the admissibility of scientific or technical expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court held that Rule 702 requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court concluded that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141. With respect to the all-important reliability determination, the Supreme Court further concluded that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and

*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* (emphasis in original).

Several factors may be considered by the trial court in assessing the reliability of proposed expert testimony. The "*Daubert* factors" that *may* be considered are: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error; (4) whether standards control operation of the technique; and (5) whether the theory or technique is generally accepted within the relevant professional community. *Id.* at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). In *Kumho Tire*, the Court recognized that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience," rather than scientific foundations. *Id.* at 150. In such cases, the trial court may focus on alternative factors that are better-suited to the specific type of expertise at issue. *Id.* at 150-52. "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "[T]he trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

Further, when expert testimony is challenged under *Daubert*, the burden of proof regarding admissibility rests with the party seeking to present the testimony. *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community.

Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.* (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

Musket first contends that Scharringhausen's opinions should be excluded because they are not based on sufficient facts and data. Specifically, Musket contends that Scharringhausen only relied on a small part of the relevant data and information, and the information he relied on was preselected for him by Defendants. Musket asserts that Scharringhausen failed to analyze other sources that were more likely to contain Musket Documents, including the computers of defendant Mark Luitwieler ("Luitwieler") and Luitwieler's assistant, Elizabeth Hatcher. Musket further asserts that Scharringhausen did not ensure that the imaged copies were captured as close to the point of issue as possible and, thus, did not cover the relevant time period. Finally, Musket asserts that Scharringhausen's forensic examination was too narrow in scope.

In their response, Defendants assert that the data and information Scharringhausen relied upon in forming his opinions encompasses all pertinent electronically stored information provided to Calvin Weeks ("Weeks"), the independent forensic expert in this case, and includes everything that Musket's expert relied upon in forming his opinions and conclusions. Defendants further assert that Scharringhausen based his opinions on information derived from the sources identified in

Federal Rule of Evidence 703.[1] Defendants also assert that the March and July 2009 backup tapes examined by Scharringhausen were "as close to the point of the issue as possible."

Having carefully reviewed the parties' submissions, the Court finds that Scharringhausen's opinions are based upon sufficient facts and data. The Court further finds that any shortcomings in the facts and data relied upon by Scharringhausen in forming his opinions go to the weight, and not the admissibility, of Scharringhausen's opinions and that during cross-examination, Musket may thoroughly question Scharringhausen regarding all of the alleged shortcomings it contends exist in the factual basis of his opinions.

Musket next contends that Scharringhausen's opinions should be excluded because they are not the product of reliable principles and methods that were reliably applied to the facts of the case. Specifically, Musket contends that Scharringhausen relied upon MD5 hash values for the list of Musket Documents that he did not generate and did not check for accuracy. Further, Musket contends that Scharringhausen admitted that he did not personally extract the data and generate the MD5 hash values for the files contained on each of the evidence items identified in his report and could not identify who actually performed this work.

---

[1] Rule 703 provides:
> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

In their response, Defendants contend that with the exception of the backup tapes, Scharringhausen did extract the data and generate the MD5 hash values for the files contained on the evidence items identified in his report. As to the hashing of the backup tapes, Scharringhausen testified as to the process used by RenewData to perform the hashing. Finally, Defendants contend that the computer forensic methods and principles that Scharringhausen relied upon are of a type reasonably relied upon by experts in computer forensics in forming an opinion on similar subjects.

Having carefully reviewed the parties' submissions, the Court finds that Scharringhausen's opinions are the product of reliable principles and methods that were reliably applied to the facts of this case. The Court further finds that any shortcomings in the principles and methods used by Scharringhausen in forming his opinions go to the weight, and not the admissibility, of Scharringhausen's opinions and that during cross-examination, Musket may thoroughly question Scharringhausen regarding all of the alleged shortcomings it contends exist in the principles and methods used in forming his opinions.

Musket further contends that Scharringhausen's opinions should be excluded because they are speculative in nature. Specifically, Musket contends that Scharringhausen's third opinion that Luitwieler did not use any Musket Documents outside the purview of litigation is nothing more than sheer speculation. Musket also contends that Scharringhausen's fourth opinion regarding access to Luitwieler's IDrive account is similarly speculative in nature, especially where Scharringhausen has failed to identify the source of the information regarding the nature of Star Fuel's virtual private network that he purportedly relied upon in formulating his opinion.

In their response, Defendants assert that Scharringhausen's opinion that Luitwieler's organizing the Musket documents into a folder named Musket Folder is consistent with document

collection activity performed in relation to document discovery requests is not speculative. Defendants further assert that the information regarding the nature of Star Fuel's virtual private network has been corroborated through the deposition testimony of Star Fuel's Director of IT, Jim Steenhoek.

Having carefully reviewed the parties' submissions, the Court finds that testimony that certain activity is "consistent with" document collection activity is not speculative and should not be excluded. During cross-examination, Musket may thoroughly question Scharringhausen regarding any shortcomings in this opinion. The Court, however, finds that any testimony by Scharringhausen in which he definitively opines what Luitwieler's intent was would be speculation and should be excluded. The Court further finds that Scharringhausen's testimony regarding Star Fuel's virtual private network is not speculative and should not be excluded. During cross-examination, Musket may thoroughly question Scharringhausen regarding any shortcomings in this opinion.

Finally, Musket contends that Scharringhausen's testimony should be excluded because Defendants have not produced the underlying data and information that Scharringhausen reviewed and considered. Specifically, Musket contends that Defendants have failed to produce the following: (1) the imaged copies of Star Fuel's server backup tape and defendants Clifton and Selph's computers and Exchange server backups, (2) all associated metadata from these evidence items extracted by RenewData and reviewed by Scharringhausen, and (3) the evidence substantiating Scharringhausen's description of the Star Fuel virtual private network. In their response, Defendants assert that the underlying data and information was produced to Weeks and Musket pursuant to the protections afforded Star Fuel's privileged and confidential information under the Agreed Protective

Order.[2]   Defendants further assert that the MD5 hash values generated by RenewData for Scharringhausen's review were, in fact, tested by Weeks.  Finally, Defendants assert that MD5 hash values were produced to Musket with no objection from Musket as to the form in which they were produced.

Having carefully reviewed the parties' submissions, the Court finds that Defendants produced the underlying data and information that Scharringhausen reviewed and considered in accordance with the Agreed Protective Order.  Because any production of the underlying data and information would, in part, involve direct inspection of a party's hard drive, certain protocols and procedures had previously been put in place by the parties, as set forth in the Agreed Protective Order, to protect each party's confidential and proprietary documents and information.  What information and data could not be produced to Musket was produced to Weeks, and he had the opportunity to test, and did test, that data and information.  Further, what information and data could be produced to Musket was produced to Musket, and Musket never objected to the form in which it was produced.  Additionally, Musket thoroughly questioned Scharringhausen in his deposition regarding his opinion related to Star Fuel's virtual private network and was able to question Mr. Steenhoek in his deposition regarding Star Fuel's virtual private network.  Accordingly, the Court finds that Scharringhausen's testimony should not be excluded based upon any alleged failure to produce the underlying data and information that Scharringhausen reviewed and considered.

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART plaintiff's Motion to Exclude Expert Testimony of Louis S. Scharringhausen [docket no. 186] as

---

[2]Defendants note in their response that Musket refused to produce the contents of Luitwieler's Musket laptop for Star Fuel's computer forensic expert to review and test on this same basis.

follows: the Court GRANTS the motion as to any testimony by Scharringhausen in which he definitively opines what Luitwieler's intent was with respect to his collection of Musket documents and DENIES the motion in all other respects.

**IT IS SO ORDERED this 5th day of October, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE