**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MUSKET CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-11-444-M |
| ) | |
| STAR FUEL OF OKLAHOMA, LLC, ) | |
| LINCOLN O. CLIFTON, ) | |
| DAVID A. SELPH, and ) | |
| MARK LUITWIELER, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is plaintiff's Motion to Exclude Expert Testimony of Todd J. Lisle, filed September 5, 2012. On September 26, 2012, defendants Star Fuel of Oklahoma, LLC, Lincoln O. Clifton, and David A. Selph ("Defendants") filed their response, and on October 3, 2012, plaintiff Musket Corporation ("Musket") filed its reply. Based upon the parties' submissions, the Court makes its determination.

Musket moves, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude the testimony of Todd J. Lisle ("Lisle"), Defendants' accounting expert. Federal Rule of Evidence 702 governs the admissibility of scientific or technical expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court held that Rule 702 requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court concluded that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141. With respect to the all-important reliability determination, the Supreme Court further concluded that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* (emphasis in original).

Several factors may be considered by the trial court in assessing the reliability of proposed expert testimony. The "*Daubert* factors" that *may* be considered are: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error; (4) whether standards control operation of the technique; and (5) whether the theory or technique is generally accepted within the relevant professional community. *Id.* at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). In *Kumho Tire*, the Court recognized that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience," rather than scientific foundations. *Id.* at 150. In such cases, the trial court may focus on alternative factors that are better-suited to the specific type of expertise at issue. *Id.* at 150-52. "The objective of [the gatekeeping] requirement is to

ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "[T]he trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

Further, when expert testimony is challenged under *Daubert*, the burden of proof regarding admissibility rests with the party seeking to present the testimony. *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.* (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

Musket first contends that Lisle lacks any specialized knowledge, skill, experience, training, or education in wholesale fuel markets and, thus, should not be allowed to offer any opinion on wholesale fuel markets, much less opinions relating to any specific party's role in those markets. Specifically, Musket contends that Lisle's opinions regarding the vendor/supplier relationship in the wholesale fuel market context, Lisle's opinion that the relationship between Musket and defendant Star Fuel of Oklahoma, LLC ("Star Fuel") in the spring and summer of 2008 was that of a typical supplier/vendor, and Lisle's opinions regarding Musket's and Star Fuel's respective positions in the wholesale fuel industry should be excluded.

In their response, Defendants assert that Lisle is qualified to testify on forensic accounting matters contained in his report. Defendants, however, do not address Musket's arguments regarding

3

Lisle's specific opinions relating to the wholesale fuel market/industry referenced above. Defendants also assert that to the extent it is relevant, Musket's objections to Lisle's specific experience goes to the weight and not the admissibility of his testimony.

Having carefully reviewed the parties' submissions, the Court finds that Defendants have not shown that Lisle is qualified to testify regarding Musket's and Star Fuel's respective positions in the wholesale fuel market/industry. While Lisle is clearly qualified to testify on forensic accounting matters, Lisle does not have any specialized knowledge, skill, experience, training, or education in wholesale fuel markets and, thus, should not be allowed to offer any opinion on the wholesale fuel market/industry.

Musket next contends that Lisle's opinions are not based upon sufficient facts or data and/or are not the product of reliable principles and methods reliably applied. Specifically, Musket contends that Lisle did not review a single source document for any of the transactions or contracts about which he has offered opinions, did not rely on any data relating to such sales, only purchase data, and made no effort to independently verify or test the accuracy of any of the purchase data provided to him by Star Fuel. In their response, Defendants contend that Lisle's opinion is based on reliable, verifiable data. Specifically, Defendants contend that Lisle's opinion is based upon actual historical data provided to him by Star Fuel, and corroborated by Star Fuel management. Defendants assert that Lisle was not hired to audit Star Fuel's books and records, but rather was retained to perform an analysis of the trend of unbranded gasoline purchases and sales before, during, and after defendant Mark Luitwieler's ("Luitwieler") employment. Defendants further assert that Musket attempts to impose a heightened standard not required by the Federal Rules of Evidence.

Having carefully reviewed the parties' submissions, the Court finds that Lisle's opinions are based upon sufficient facts and data and are the product of reliable principles and methods that were reliably applied to the facts of this case. The Court further finds that any shortcomings in the facts and data relied upon by Lisle, or the principles and methods used by Lisle, in forming his opinions go to the weight, and not the admissibility, of Lisle's opinions and that during cross-examination, Musket may thoroughly question Lisle regarding all of the alleged shortcomings it contends exist in the factual basis of his opinions and the principles and methods used in forming his opinions.

Musket further contends that Lisle's opinion regarding whether Luitwieler should be given credit for the resulting increase in unbranded gallons sold pursuant to an alleged contract between Conoco Philips and Star Fuel that was entered into after Luitwieler began his employment should be excluded. Musket states that this alleged Conoco Philips contract has never been produced to Musket or Lisle. Musket also asserts that Lisle has never reviewed any related transaction documents, such as emails between the parties or invoices and bills of lading for the actual sales pursuant to this alleged contract, and he cannot identify basic material terms of the alleged contract, such as the purchase volume minimums or the pricing provided for under the contract. In their response, Defendants do not address the Conoco Philips contract.

Having carefully reviewed the parties' submissions, the Court finds that because the Conoco Philips contract has not been produced to Musket, Lisle's opinion regarding whether Luitwieler should be given credit for the resulting increase in unbranded gallons sold pursuant to the Conoco Philips contract should be excluded. The Court finds that without having seen the Conoco Philips contract, Musket would be unable to effectively cross examine Lisle regarding this opinion.

Musket also contends that Lisle improperly commingles or combines the transaction data for Star Fuel and its Kansas-based retail affiliate, Star Fuel Centers, for the period prior to Luitwieler's employment for use in his opinions. In their response, Defendants assert that prior to July 2008, both Star Fuel Centers and Star Fuel were engaged in the purchase of unbranded fuel and in July 2008, for tax reasons, Star Fuel Centers transferred its fuel purchasing operations to Star Fuel. Defendants state that thereafter all fuel for the Star entities was purchased by Star Fuel. Defendants contend that in order for Lisle to properly analyze the trends in the volumes of unbranded gasoline purchased and sold by Star Fuel before, during, and after Luitwieler's employment with Star Fuel, it was necessary to consider volumes of fuel purchased not only by Star Fuel, but also by Star Fuel Centers prior to July 2008.

Having carefully reviewed the parties' submissions, the Court finds that Lisle's opinions should not be excluded based upon the fact that he included the transactional data for Star Centers for the period prior to Luitwieler's employment in analyzing the trends in the volumes of unbranded gasoline purchased and sold by Star Fuel. The Court further finds that any shortcomings in including the transaction data for Star Centers go to the weight, and not the admissibility, of Lisle's opinions and that during cross-examination, Musket may thoroughly question Lisle regarding all of the alleged shortcomings it contends exist as a result of including the transactional data for Star Centers in making his analysis.

Musket contends that the Excel spreadsheet summaries relied upon by Lisle should be excluded from trial pursuant to Federal Rule of Evidence 1006 because Defendants have not provided plaintiffs with the information underlying the summaries. In their response, Defendants contend that the Excel spreadsheet summaries are considered business records that constitute an

6

exception to the hearsay rule and are admissible under Federal Rule of Evidence 803(6). Specifically, Defendants assert that the data in the printouts is what Star Fuel uses in its normal business to track purchases and was entered in Star Fuel's Great Plains accounting and Fuel Smart software systems at or near the time of the events recorded.

Having carefully reviewed the parties' submissions, the Court finds that the Excel spreadsheet summaries should not be excluded under Rule 1006. Specifically, the Court finds that the Excel spreadsheets should be analyzed as business records and not summaries. *See United States v. Catabran*, 836 F.2d 453, 457 (9th Cir. 1988); *United States v. Draiman*, 784 F.2d 248, 256 n.6 (7th Cir. 1986). Therefore, the Court finds that if Defendants can satisfy the requirements of Rule 803(6), the Excel spreadsheet summaries are admissible.

Musket further contends that Lisle's opinions should be excluded because he fails to consider relevant facts and data. In their response, Defendants contend that Lisle is not required to consider all possible evidence in forming his opinion and his perceived failure to consider "relevant" evidence goes to the weight, not admissibility, of his testimony. Having carefully reviewed the parties' submissions, the Court finds that Lisle's opinions should not be excluded based upon any alleged failure to consider relevant facts and data. The Court further finds that any shortcomings in the alleged failure to consider relevant facts and data go to the weight, and not the admissibility, of Lisle's opinions and that during cross-examination, Musket may thoroughly question Lisle regarding all of the alleged shortcomings it contends exist as a result of Lisle not considering this relevant evidence.

Finally, Musket contends that the following statements made by Lisle are improper legal conclusions that should be excluded: (1) Lisle's statement that Luitwieler should not be credited for

unbranded fuel sold pursuant to an alleged Conoco Philips contract that has never been produced and that Lisle has never seen;[1] (2) Lisle's statement that he has seen no evidence of any agreement between Musket and Star Fuel to split profits and losses on certain fuel transactions; (3) Lisle's statement that there is no evidence of any misrepresentations made by Luitwieler on behalf of Star Fuel; (4) Lisle's statement that David Payne's damages calculations are inconsistent with Musket's legal theories and irrelevant to the issues at trial; and (5) Lisle's statement that Star Fuel cannot be held liable for Musket's losses on the 840,000 gallons of fuel, absent a written agreement to purchase the fuel.  Based upon a review of the statements at issue, the Court finds that statements 3, 4, and 5, as currently worded, are improper legal conclusions that should be excluded from trial.

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Musket's Motion to Exclude Expert Testimony of Todd J. Lisle [docket no. 190] as follows:

(1) The Court GRANTS the motion to exclude as to (1) any opinion on the wholesale fuel market/industry, (2) any opinion regarding whether Luitwieler should be given credit for the resulting increase in unbranded gallons sold pursuant to the Conoco Philips contract, (3) Lisle's statement that there is no evidence of any misrepresentations made by Luitwieler on behalf of Star Fuel, (4) Lisle's statement that David Payne's damages calculations are inconsistent with Musket's legal theories and irrelevant to the issues at trial, and (5) Lisle's statement that Star Fuel cannot be held liable for Musket's losses on the 840,000 gallons of fuel, absent a written agreement to purchase the fuel, and

(2) The Court DENIES the remainder of the motion to exclude.

**IT IS SO ORDERED this 5th day of October, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] In light of the Court's ruling that Lisle's opinion with regard to the Conoco Philips contract should be excluded, the Court finds whether this statement is an improper legal conclusion is moot.