# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

MUSKET CORPORATION, )
                    Plaintiff, )
vs. ) Case No. CIV-11-444-M
STAR FUEL OF OKLAHOMA, LLC, )
LINCOLN O. CLIFTON, )
DAVID A. SELPH, and )
MARK LUITWIELER, )
                    Defendants. )

## **ORDER**

Before the Court is defendants Star Fuel of Oklahoma, LLC, Lincoln O. Clifton, and David A. Selph's ("Moving Defendants") Renewed Motion for Judgment as a Matter of Law, filed November 16, 2012. On December 28, 2012, plaintiff filed its response, and on January 4, 2013, Moving Defendants filed their reply.

I.    Introduction

This case was tried to a jury from October 9, 2012 through October 29, 2012. After deliberation, the jury returned a verdict in favor of plaintiff and against defendant Star Fuel of Oklahoma, LLC ("Star Fuel") on plaintiff's claims for breach of implied contract[1], fraud, constructive fraud, misappropriation of trade secrets, and unfair competition, in favor of plaintiff and against defendant Mark Luitwieler ("Luitwieler") on plaintiff's claims for fraud (for the period of March 2008 through September 11, 2008), breach of contract (Non-Disclosure Agreement), and

---

[1]Pursuant to the Court's prior orders finding defendants Lincoln O. Clifton ("Clifton") and David A. Selph ("Selph") personally liable for any damages awarded to plaintiff on its breach of implied contract claim, the Court subsequently entered judgment in plaintiff's favor and against Clifton and Selph on plaintiff's breach of implied contract claim based upon the jury's verdict against Star Fuel.

violation of the Computer Fraud and Abuse Act, and in favor of Luitwieler and against plaintiff on plaintiff's claims for breach of fiduciary duty, fraud (for the period of September 12, 2008 through November 2008), misappropriation of trade secrets, and unfair competition. Moving Defendants now move for renewed judgment as a matter of law on plaintiff's claims for breach of implied contract, fraud, constructive fraud, misappropriation of trade secrets, and unfair competition and/or alternatively, for a new trial on plaintiff's claims for misappropriation of trade secrets and unfair competition.

II. Applicable Standard for Judgment as a Matter of Law

"Judgment as a matter of law is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. We do not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for that of the jury. However, we must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law." *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997) (internal quotations and citations omitted). In considering a motion for judgment as a matter of law, the court should construe the evidence and inferences most favorably to the non-moving party. *Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 976 (10th Cir. 1996).

III. Discussion

A. Breach of implied contract claim

Moving Defendants contend that the judgment entered for plaintiff on its breach of implied contract claim is barred by the statute of frauds. Specifically, Moving Defendants assert that the judgment on plaintiff's breach of implied contract claim is based solely upon an alleged implied

2

agreement to purchase 840,000 gallons of unleaded gasoline for $2.8 million and that the damages awarded on plaintiff's implied contract claim related solely to Star Fuel's refusal to purchase 840,000 gallons for the alleged contract price of $3.35 per gallon.

In response, plaintiff contends that the statute of frauds does not bar judgment in its favor on its breach of implied contract claim. Specifically, plaintiff asserts that the implied risk-sharing agreement is not within the statute of frauds and, in any event, Moving Defendants are equitably estopped from relying on the statute of frauds to avoid liability for the losses caused by Star Fuel's wrongful acts.

Whether the statute of frauds bars certain of plaintiff's claims is not a new issue in this case. This Court previously granted summary judgment to Star Fuel on Musket's breach of contract claim based upon an unsigned Fuel Purchase Agreement, finding that the Fuel Purchase Agreement violated the statute of frauds and finding that based upon its terms, the Fuel Purchase Agreement never became an enforceable contract. *See* September 12, 2011 Order [docket no. 51]. Clifton and Selph also individually moved for summary judgment as to plaintiff's breach of implied contract claim, relying in part on the statute of frauds and this Court's prior ruling. In response, plaintiff contended that its breach of implied contract claim was not premised on Star Fuel's breach of the express obligation to purchase the 840,000 gallons of fuel pursuant to the unsigned gasoline contract but rather arose from Star Fuel's actual or implied agreement to share in the profits and losses on certain fuel transactions. In ruling on Clifton and Selph's motion for summary judgment, the Court found:

> Thus, if Musket's implied contract claim was simply based upon Star Fuel's alleged breach of an implied contract to purchase the 840,000 gallons of fuel which was the subject of the unsigned gasoline contract, Clifton and Selph's arguments would be

3

> meritorious and they would be entitled to summary judgment. However, upon review of the parties' submissions, and particularly Musket's Third Amended Petition, the Court finds that Musket's implied contract claim is not based upon Star Fuel's alleged breach of an implied contract to purchase the 840,000 gallons of fuel but is based upon Star Fuel's alleged breach of an implied contract to share in the profits or losses on certain fuel transactions. Musket's implied contract claim, therefore, does not cover the identical subject of the express unsigned gasoline contract to purchase the 840,000 gallons of fuel, and said claim, thus, is not rendered inoperative as a matter of law by virtue of Musket's breach of express contract allegations.
>
> Additionally, because Musket's breach of implied contract claim is based upon a different agreement than its breach of contract claim was based upon (an implied agreement to share in the profits or losses on certain fuel transactions versus an express unsigned gasoline contract to purchase 840,000 gallons of fuel), the Court finds that Musket's breach of implied contract claim has not been abrogated by this Court's September 12, 2011 Order. Further, the Court finds that in their motion, Clifton and Selph have not sufficiently shown that the alleged implied agreement to share in the profits or losses on certain fuel transactions is subject to the Statute of Frauds.
>
> Accordingly, the Court finds that Clifton and Selph are not entitled to summary judgment on Musket's breach of implied contract claim.

August 21, 2012 Order [docket no. 175] at 10.

As set forth above, the Court, prior to and during trial, made a clear distinction between an implied agreement to share in the profits or losses on certain fuel transactions and an implied agreement to purchase 840,000 gallons of fuel. Additionally, plaintiff repeatedly relied upon this distinction in making its arguments as to why judgment should not be granted against it on its breach of implied contract claim, repeatedly emphasizing that its breach of implied contract claim arises from Star Fuel's implied agreement to share in the profits and losses on certain fuel transactions.

4

However, during the trial of this matter, plaintiff did not solely rely upon this implied agreement to share in the profits and losses on certain fuel transactions and did not seek damages from Star Fuel for its half of the losses it incurred on the 840,000 gallons of fuel, but instead relied upon and sought damages based upon Star Fuel's agreement to purchase the 840,000 gallons on a fixed-forward basis under the "second option" of the risk-sharing agreement. Specifically, plaintiff described the implied risk-sharing agreement as follows:

> Luitwieler had the authority to decide when and how much fuel to purchase when he feels its [sic] right, and then Luitwieler and Star Fuel would jointly decide when to sell the fuel to a third party. Any profits or losses would be split evenly. The price Star Fuel would pay Musket for the fuel would be 50% of the difference between Musket's wholesale cost and the retail price at which Star Fuel could sell the fuel to its customers. In the alternative, Star Fuel could choose to purchase the fuel on a fixed-forward basis at a price equal to Musket's wholesale cost plus $0.01 per gallon for each supply contract.

Plaintiff's Response to Defendants Lincoln Clifton and David Selph's Motion for Summary Judgment [docket no. 150] at 4, ¶ 8 (citing, in part, to the April 4, 2008 email from Luitwieler). Additionally, plaintiff's expert testified at trial that the measure of damages for plaintiff's breach of implied contract claim based on the 840,000 gallons of fuel was $1,631,700 based upon the "contract price" of $3.35 a gallon minus the amount of money plaintiff made when the fuel was disposed of on November 5, 2008 at about $1.41 a gallon. *See* testimony of David Payne at p. 47, lines 1-5, attached as Exhibit 5 to Plaintiff's Response and Objection to Defendants' Renewed Motion for Judgment as a Matter of Law.

While the first option of the alleged risk-sharing agreement likely does not violate the statute of frauds, the Court finds that the second option of the alleged risk-sharing agreement – the option upon which plaintiff relied in relation to the 840,000 gallons of fuel and the option upon which the

5

jury's damage award is based – does violate the statute of frauds. Oklahoma's statute of frauds addressing the sale of goods provides:

> Except as otherwise provided in this section a contract for the sale of goods for the price of Five Hundred Dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Okla. Stat. tit. 12A, § 2-201(1). Additionally, under Oklahoma law, "an implied contract . . . is no less within the statute of frauds than is an express contract. . . ." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1387 (10th Cir. 1997).

The implied contract that resulted from Star Fuel's election of the second option of the risk-sharing agreement in relation to the 840,000 gallons of fuel clearly is an implied contract for the sale of goods (fuel) for the price of five hundred dollars or more ($2,805,600). It is also undisputed that there is no signed writing evidencing the implied contract. Accordingly, the Court finds that the implied contract for the purchase of 840,000 gallons of fuel, as developed during the trial of this matter, violates the statute of frauds. The Court, therefore, finds that unless Star Fuel is estopped from asserting the statute of frauds, it is entitled to judgment as a matter of law as to plaintiff's breach of implied contract claim.

Plaintiff contends that regardless of whether the implied risk-sharing agreement would otherwise fall within the statute of frauds, Moving Defendants are equitably estopped from relying on the statute of frauds in this case. "Under Oklahoma law, a defendant must make false representations or conceal facts before he will be estopped from asserting the statute of frauds as a

defense to an oral agreement, . . . ." *Gibson v. Arnold*, 288 F.3d 1242, 1245 (10th Cir. 2002). The essential elements of equitable estoppel are:

> First, there must be a false representation or concealment of facts; second, it must have been made with knowledge, actual or constructive, of the real facts; third, the party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts; fourth, it must have been made with the intention that it should be acted upon; fifth, the party to whom it was made must have relied on, or acted upon, it to his prejudice.

*Sellers v. Sellers*, 428 P.2d 230, 240 (Okla. 1967) (internal quotations and citation omitted). "The representation or concealment . . . may arise from silence of a party under imperative duty to speak; and the intention that the representation or concealment be acted upon may be inferred from circumstances." *Lacy v. Wozencraft*, 105 P.2d 781, 783 (Okla. 1940).

"A party who relies on estoppel must plead and prove the facts to establish the same." *Sellers*, 428 P.2d at 240. Additionally, under Oklahoma law, whether equitable estoppel applies is a mixed question of law and fact. *See Southerland v. Granite State Ins. Co.*, 12 F. App'x 712, 714 (10th Cir. 2001). Finally,

> Unquestionably in a proper case a party may be estopped to plead the statute of frauds. Estoppel to claim the statute as a defense in such cases is based upon equitable principles. The statute of frauds is designed as an instrument to prevent frauds, and a court of equity may prevent a party from taking advantage of the statute to perpetrate a fraud. The very essence of equitable estoppel is the resulting prejudice to the party who invokes the doctrine.
>
> . . . The fraud against which a court of equity will relieve, to the extent of enforcing a parol contract, notwithstanding the statute of frauds, is not the mere moral fraud or wrong involved in the repudiation of a contract actually entered into, but which by reason of the statute he is not bound to perform for want of its being in writing, . . . but consists in the repudiation of a contract which has been made and upon which an innocent party has been misled to his injury, if the statute of frauds be strictly enforced against him.

7

> Not only must the person who claims the benefit of an equitable estoppel to prevent another from pleading the statute of frauds be misled to his prejudice, but the injury suffered by him must be of such a character that he could not obtain redress in an ordinary way by an action at law.
>
> \* \* \*
>
> . . . Our lawmaking bodies, in the exercise of their wisdom, have enacted the statute of frauds. In order to prevent frauds, they have required that certain classes of contracts be reduced to writing. Although equity may intervene for the purpose of preventing this statute from being used as an instrument of fraud, the exercise of this power must be carefully guarded, and it should not be applied unless a manifest and unconscionable injustice would result if such relief were withheld, and even then only in cases where the law does not provide a complete and adequate remedy.

*St. Louis Trading Co. v. Barr*, 32 P.2d 293, 295-96 (Okla. 1934) (internal quotations and citations omitted).

Plaintiff alleges that it has presented ample evidence of all of the elements necessary to support estoppel by silence and affirmative misrepresentation/concealment. Specifically, plaintiff contends that while Star Fuel was enjoying all of the benefits of sharing the profits from numerous purchases and sales of millions of gallons of fuel, Star Fuel never contacted plaintiff to correct any misunderstanding and clearly communicate its position that it did not intend to share in potential losses. Additionally, plaintiff contends that Star Fuel never advised plaintiff that it did not believe the "August Fixed Price Gasoline Contract dated August 4, 2008" referenced in the Settlement Agreement existed and that it had no intention of performing that agreement if it did exist. Plaintiff further contends that Star Fuel made numerous affirmative statements of intent to perform that induced plaintiff to continue to hold the 840,000 gallons of fuel for Star Fuel's benefit while the market prices continued to decline. Finally, plaintiff contends that by finding in favor of plaintiff

on the elements of fraud and constructive fraud, the jury necessarily found all of the elements required for equitable estoppel.

Moving Defendants contend that the doctrine of equitable estoppel has no application to this case. First, Moving Defendants contend that plaintiff's alleged injury was not "unjust or unconscionable." Specifically, Moving Defendants contend that Star Fuel's perceived failure to keep its oral promise in the circumstances of this case cannot be said to rise to a level of unconscionability warranting the application of equitable estoppel. Further, Moving Defendants contend that the fact this Court removed the issue of punitive damages from the jury's consideration evidences the Court's belief that there was insufficient evidence of malicious conduct by the Moving Defendants. Finally, Moving Defendants contend the jury's verdict on plaintiff's fraud claims was for only $11,000 each, reflecting the jury's sentiment that plaintiff's contractual damages were unrelated to its fraud allegations.

Having carefully reviewed the parties' submissions, and having heard the evidence presented during the trial of this case, the Court finds that the doctrine of equitable estoppel does not apply to the circumstances involved in this case. Specifically, the Court finds that equitable estoppel is an extraordinary remedy and plaintiff has not shown that a manifest and unconscionable injustice would result if Moving Defendants were not equitably estopped from relying on the statute of frauds in defense of plaintiff's breach of implied contract claim. The Court finds Star Fuel's conduct does not rise to more than the moral fraud or wrong involved in the repudiation of a contract actually entered into, but which by reason of the statute it is not bound to perform for want of its being in writing. This finding is further supported by the Court's ruling that the issue of punitive damages would not be sent to the jury.

Accordingly, the Court finds that the implied contract for the purchase of 840,000 gallons of fuel, as developed during the trial of this matter, violates the statute of frauds and that Star Fuel is entitled to judgment as a matter of law as to plaintiff's breach of implied contract claim. Additionally, because Clifton and Selph's liability is based upon Star Fuel's liability as to plaintiff's breach of implied contract claim, the Court also finds that Clifton and Selph are entitled to judgment as a matter of law on the guaranty claims against them.

    B.    <u>Misappropriation of trade secrets and unfair competition claims</u>

Star Fuel contends that there was no evidence of misappropriation of trade secrets or unfair competition and that it is entitled to judgment as a matter of law as to these claims.

"To prove misappropriation of a trade secret, [a plaintiff] must show (i) the existence of a trade secret, (ii) misappropriation of the secret by defendants, and (iii) use of the secret to [the plaintiff's] detriment." *MTG Guarnieri Mfg., Inc. v. Clouatre*, 239 P.3d 202, 209 (Okla. Civ. App. 2010). Star Fuel contends that plaintiff failed to adequately establish the information at issue constitutes trade secrets, presented no evidence that Star Fuel misappropriated them, and failed to establish that Star Fuel used the trade secrets to plaintiff's detriment. Viewing the evidence and inferences in the light most favorable to plaintiff, the Court finds there is a legally sufficient evidentiary basis to support the jury's finding in favor of plaintiff on its misappropriation of trade secrets claim against Star Fuel. Specifically, the Court finds that there is a legally sufficient evidentiary basis for finding the existence of a trade secret, that Star Fuel misappropriated the trade secret(s), and that Star Fuel used the trade secret(s) to plaintiff's detriment. The Court would note that in its oral Rule 50(a) motion, Star Fuel specifically conceded that plaintiff raised an issue of fact as to the existence of a trade secret. *See* Unofficial Excerpts of October 29, 2012 hearing at p. 8,

lines 5-8, attached as Exhibit 7 to Plaintiff's Response and Objection to Defendants' Renewed Motion for Judgment as a Matter of Law. Additionally, the Court finds that there is a legally sufficient evidentiary basis for the jury's damages award. Accordingly, the Court finds that judgment as a matter of law should not be granted in favor of Star Fuel on plaintiff's misappropriation of trade secrets claim.

Star Fuel also contends that plaintiff presented no evidence of unfair competition. Specifically, Star Fuel contends that plaintiff did not present sufficient evidence that plaintiff and Star Fuel were competitors and that plaintiff did not show that Star Fuel used any of its trade secrets or that plaintiff lost any customers as a result of the use of its trade secrets. Viewing the evidence and inferences in the light most favorable to plaintiff, the Court finds there is a legally sufficient evidentiary basis to support the jury's finding in favor of plaintiff on its unfair competition claim against Star Fuel. Specifically, the Court finds that there is a legally sufficient evidentiary basis for finding that Star Fuel and plaintiff were competitors and that there is a legally sufficient evidentiary basis for finding that Star Fuel engaged in an act of unfair competition, particularly plaintiff presented evidence showing that Star Fuel used plaintiff's trade secrets and that Star Fuel acquired several new customers that were former customers of plaintiff. Accordingly, the Court finds that judgment as a matter of law should not be granted in favor of Star Fuel on plaintiff's unfair competition claim.

Star Fuel further contends that the jury's verdict is irreconcilably inconsistent and that it is entitled to a new trial on plaintiff's misappropriation of trade secrets and unfair competition claims. Specifically, the jury found in favor of Luitwieler on plaintiff's misappropriation of trade secrets and unfair competition claims but found against Star Fuel on plaintiff's misappropriation of trade secrets

11

and unfair competition claims, despite the fact that these claims were premised solely on the actions of Luitwieler. In response, plaintiff asserts that its misappropriation of trade secrets and unfair competition claims were not based solely on the actions of Luitwieler. Plaintiff further asserts that Star Fuel waived its challenge to the jury verdict by failing to raise it before the jury was discharged.

> A failure to object to general jury verdicts on the ground of inconsistency before the jury is discharged constitutes waiver, unless the verdict is inconsistent on its face such that the entry of judgment upon the verdict is plain error. However, when the verdicts are special verdicts a party is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court.

*Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993) (internal citations omitted).

In the case at bar, the verdicts rendered by the jury are clearly general verdicts rather than special verdicts; the verdict form simply provided for the jury to find in favor of a specific party and then, if applicable, award an amount of damages. It is also undisputed that Star Fuel did not object to the jury's verdict on the ground of inconsistency before the jury was discharged. The Court, therefore, must determine whether the verdict is inconsistent on its face such that the entry of judgment upon the verdict is plain error.

Having carefully reviewed the parties' submissions, as well as the evidence presented at the trial, the Court finds that the verdict is not inconsistent on its face and that Star Fuel waived its challenge to the jury verdicts on plaintiff's misappropriation of trade secrets and unfair competition claims by failing to raise said objection before the jury was discharged. While a large portion of plaintiff's claims for misappropriation of trade secrets and unfair competition relied on the actions of Luitwieler, plaintiff did present some evidence from which a jury could infer trade secret use by other Star Fuel employees. Thus, it is entirely possible that the jury could have concluded that

Luitwieler was not personally liable for trade secret misappropriation and unfair competition but that he did engage in a wrongful act or acts attributable to Star Fuel such that these acts, in conjunction with other acts of other Star Fuel employees, rendered Star Fuel liable for trade secret misappropriation and unfair competition. The Court, therefore, finds that the jury's verdict is not inconsistent on its face. Accordingly, the Court finds that Star Fuel is not entitled to a new trial as to plaintiff's misappropriation of trade secrets and unfair competition claims.

### C. Fraud claims

Star Fuel contends that it is entitled to judgment as a matter of law as to plaintiff's fraud claims. Specifically, Star Fuel contends that it is entitled to judgment as a matter of law because plaintiff's fraud claims are based upon Star Fuel's refusal to purchase the 840,000 gallons of fuel and Star Fuel cannot be held liable for fraud for refusing to perform an agreement, express or implied, that is unenforceable under the statute of frauds. Star Fuel also contends that plaintiff failed to show any actionable misrepresentation by Star Fuel during the parties' relationship. Star Fuel further contends that there was no evidence of constructive fraud. Finally, Star Fuel contends that plaintiff's reliance on Luitwieler's statements concerning the 840,000 gallons of fuel was unjustified and unreasonable.

Having carefully reviewed the parties' submissions and the evidence at trial, and viewing the evidence and inferences in the light most favorable to plaintiff, the Court finds Star Fuel is not entitled to judgment as a matter of law as to plaintiff's fraud claims. First, the Court finds that plaintiff's fraud claims are not based upon either the unsigned Fuel Purchase Agreement or the implied agreement based upon the second option of the risk-sharing agreement – agreements that this Court has found violate the statute of frauds – but are based upon Star Fuel's misrepresentations

13

regarding its intent to share in profits and losses under the parties' risk-sharing agreement and Star Fuel's false representations on and after September 12, 2008, concerning its intent to purchase and take possession of the 840,000 gallons of fuel, which induced plaintiff to continue to hold the fuel. The fact that plaintiff's fraud claims are not based upon the agreement which served as the basis for plaintiff's breach of implied contract claim, and which this Court has found violates the statute of frauds, is shown by the damages awarded by the jury – the jury awarded plaintiff $1,631,700 in damages in relation to its breach of implied contract claim and awarded $11,130 in damages in relation to each of plaintiff's fraud claims. The Court further finds that plaintiff presented legally sufficient evidence to support a finding that Star Fuel made false material misrepresentations, that there is a legally sufficient evidentiary basis for finding Star Fuel committed constructive fraud, and that plaintiff presented legally sufficient evidence to support a finding that plaintiff's reliance was justified and reasonable. Accordingly, the Court finds that Star Fuel is not entitled to judgment as a matter of law as to plaintiff's fraud claims.

IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Moving Defendants' Renewed Motion for Judgment as a Matter of Law [docket no. 334] as follows:

> (A) The Court GRANTS Moving Defendants' motion as to plaintiff's breach of implied contract claim as to Star Fuel and guaranty claims as to Clifton and Selph, and

    (B)    The Court DENIES Moving Defendants' motion as to plaintiffs' misappropriation of trade secrets, unfair competition, and fraud claims.

**IT IS SO ORDERED this 6th day of May, 2013.**

*[Signature]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE