**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

MUSKET CORPORATION, )
)
Plaintiff, )
)
vs. )     Case No. CIV-11-444-M
)
STAR FUEL OF OKLAHOMA, LLC, )
LINCOLN O. CLIFTON, )
DAVID A. SELPH, and )
MARK LUITWIELER, )
)
Defendants. )

## ORDER

Before the Court is plaintiff's Motion for Attorney's Fees, Related Nontaxable Expenses, and Expert Deposition Fees, filed June 29, 2015. On July 27, 2015, defendants Star Fuel of Oklahoma, LLC ("Star Fuel"), Lincoln O. Clifton ("Clifton"), and David A. Selph ("Selph") (collectively "Defendants") filed their response, and on August 3, 2015, plaintiff filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.     Background

On September 12, 2011, this Court granted summary judgment to Star Fuel on plaintiff's breach of contract and breach of settlement agreement claims. On November 18, 2011, the Court granted Star Fuel's Motion to Dismiss Counterclaims with Prejudice and dismissed Star Fuel's counterclaims against plaintiff for breach of contract, rescission, and accounting with prejudice. The parties tried this case to a jury from October 9, 2012 through October 29, 2012, and on November 1, 2012, the jury returned its verdict, finding in favor of plaintiff and against Star Fuel on plaintiff's claims for breach of implied contract, fraud, constructive fraud, misappropriation of trade secrets, and unfair competition. The jury awarded plaintiff a total of $2,053,960 in damages against Star

Fuel as follows: (1) breach of implied contract - $1,631,700; (2) fraud – $11,130; (3) constructive fraud – $11,130; (4) misappropriation of trade secrets – $200,000; and (5) unfair competition – $200,000. On November 7, 2012, the Court entered judgment against Star and, in accordance with the Court's prior orders finding that a personal guarantee subjected Clifton and Selph to personal liability for any damages awarded on plaintiff's claim for breach of implied contract, entered judgment in the amount of $1,631,700 against Clifton and Selph.

On May 6, 2013, the Court granted in part Defendants' renewed motion for judgment as a matter of law and held that plaintiff's claim for breach of implied contract was barred by the statute of frauds. The Court also determined that Defendants were not equitably estopped from asserting the statute of frauds as a defense. As a result, the Court found that judgment as a matter of law should be entered in favor of Defendants in relation to plaintiff's claim for breach of implied contract and entered an Amended Judgment accordingly.

Plaintiff appealed, and on April 6, 2015, the Tenth Circuit Court of Appeals reversed this Court's determination. The Tenth Circuit agreed with this Court that plaintiff's implied contract claim was subject to the statute of frauds but held that Defendants were equitably estopped from relying on the statute of frauds because the jury found that Star Fuel committed fraud and constructive fraud. The Tenth Circuit, thus, directed this Court to reinstate the jury's verdict on plaintiff's claim for breach of implied contract. On May 5, 2015, the Court entered a Second Amended Judgment in accordance with the Tenth Circuit's opinion.

On May 18, 2015, the Tenth Circuit entered an order finding that plaintiff was entitled to recover attorney fees under Okla. Stat. tit. 12, § 936 as the prevailing party on an implied claim for the sale of goods and that the terms of the personal guarantee made Clifton and Selph liable as well

for the attorney fees. Finally, on March 3, 2016, this Court granted plaintiff's Motion to Amend Judgment to Include Prejudgment Interest and entered a Third Amended Judgment awarding prejudgment interest against Defendants in the amount of $636,228.89.

## II.     Discussion

Plaintiff now moves the Court, under Federal Rule of Civil Procedure 54(d)(2) and Local Civil Rule 54.2, for an award of attorney's fees in the amount of $924,332 against Defendants and an award of related nontaxable expenses in the amount of $80,691.38 against Clifton and Selph. Plaintiff also moves the Court, under Federal Rule of Civil Procedure 26(b)(4)(E), for an award of deposition-related expert witness fees in the amount of $13,141,25.

### A.     Attorney's fees[1]

Plaintiff contends that it is statutorily and contractually entitled to an award of appeal- and trial-related attorney's fees as the prevailing party on its claim for breach of implied contract. Plaintiff further contends that it is contractually entitled to an award of attorney's fees as the prevailing party on Star Fuel's counterclaims. Plaintiff asserts that as of May 15, 2015, it has incurred attorney's fees in the total amount of $1,771,701.50 in connection with the prosecution of all of its claims and the defense of Star Fuel's counterclaims. Plaintiff further asserts that it has discounted and apportioned these fees substantially to eliminate fees for work attributable solely to non-fee-bearing claims and fees that are otherwise non-recoverable. As a result, plaintiff seeks a total fee award in the amount of $924,332.

---

[1]There is no dispute that plaintiff is entitled to recover attorney's fees related to its claim for breach of implied contract under Okla. Stat. tit. 12, § 936 and the personal guarantees executed by Clifton and Selph. The parties dispute the appropriate amount of the attorney's fees to be awarded.

Defendants contend that the amount of attorney's fees requested by plaintiff should be substantially reduced based upon the following: (1) Star Fuel was awarded summary judgment on the heart of plaintiff's case – its breach of contract and breach of settlement agreement claims and since plaintiff lost these claims, any award should be reduced by the amount plaintiff incurred in responding to Star Fuel's Motion for Partial Summary Judgment on said issues; (2) plaintiff first raised its breach of implied contract claim on April 1, 2011, two and a half years after the case was initially filed, and plaintiff is not entitled to any attorney's fees for the time period prior to the assertion of the breach of implied contract claim; (3) plaintiff is not entitled to recover fees for the dismissal of Star Fuel's counterclaims with prejudice; (4) plaintiff's attorney's fees should be reduced for hours that were excessive, redundant, and otherwise unnecessary; and (5) plaintiff's other non-fee based claims should be apportioned to prevent an inequitable and unreasonable result. Defendants, thus, assert that plaintiff is entitled to only $305,038.79 in attorney's fees.

1.    Fees predating the assertion of the breach of implied contract claim

Plaintiff filed the instant action in November 2008. Plaintiff did not assert its cause of action for breach of implied contract until April 1, 2011. Defendants assert that it would be inequitable, as well as unreasonable, to award fees during 2008-2010 for a claim that was not at issue until April 1, 2011.

Plaintiff asserts that the same facts that were required to prevail on its implied contract theory were also relevant to the principal legal theories it asserted at the beginning of the lawsuit in late 2008 – namely, breach of contract, breach of settlement agreement, and constructive fraud – as well as the fraud and conspiracy theories that it alleged in early 2009. Plaintiff further asserts that its work on these other theories before 2011, including depositions of key witnesses and critical

document discovery, established the facts that led it to assert its implied contract theory. Plaintiff contends that this work prior to April 1, 2011 was essential to plaintiff's ultimate success on its implied contract theory. Additionally, plaintiff contends that it was required to do the same work in connection with its implied contract theory regardless of when that theory was first set forth in a pleading. Plaintiff, therefore, asserts that the Court should reject Defendants' arguments that plaintiff is categorically barred from recovering fees for work performed before April 2011.

Having carefully reviewed the parties' submissions, the Court finds that all fees incurred prior to April 2011 should not be categorically excluded simply because they were incurred prior to the date plaintiff asserted its implied contract theory. Specifically, the Court finds that certain of the discovery conducted prior to April 2011, such as depositions of key witnesses and critical document discovery, established facts that led to the development of plaintiff's implied contract theory and, thus, would be recoverable in relation to plaintiff's breach of implied contract claim. "Of course, some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.' Most obvious examples are . . . the work associated with the development of the theory of the case." *Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234, 243 (1985). Additionally, the Court finds that work performed on the related breach of contract and breach of settlement agreement claims, as well as plaintiff's fraud claims, would have been necessarily incurred in prosecuting plaintiff's breach of implied contract claim alone. Specifically, to prevail on its breach of implied contract claim, plaintiff was required to establish the facts regarding the parties' history and prior dealings, plaintiff's purchase of the 840,000 gallons of fuel under the parties' risk-sharing arrangement, Star Fuel's elections to buy the 840,000 gallons from plaintiff at a fixed price of $3.35/gallon, Star Fuel's refusal to perform, and the damages incurred

by plaintiff. Plaintiff was also required to show that it detrimentally relied on misrepresentations made by Star Fuel to prove that Star Fuel was equitably estopped from relying on a statute of frauds defense. The Court finds these same facts were relevant to plaintiff's earlier asserted claims of breach of contract, breach of settlement agreement, constructive fraud, fraud, and conspiracy. Thus, the Court finds that plaintiff is not categorically barred from recovering fees for work performed prior to April 2011.

2.     <u>Star Fuel's counterclaims under the Settlement Agreement</u>[2]

The Settlement Agreement provides for prevailing party attorney's fees in any lawsuit concerning "any controversy or dispute arising from, under or related to th[e] Settlement Agreement." Settlement Agreement and Mutual Release, attached as Exhibit 2 to Plaintiff's Motion for Attorney's Fees, Related Nontaxable Expenses, and Expert Deposition Fees with Brief in Support, at ¶ 5.2. In its answer to plaintiff's Third Amended Petition, Star Fuel asserted three counterclaims relating to the Settlement Agreement: (1) rescission of the Settlement Agreement on the ground of fraud, (2) breach of the Ethanol Terminal Agreement (the Settlement Agreement was a compromise of the parties' claims and disputes regarding the Ethanol Terminal Agreement), and (3) an accounting under the Ethanol Terminal Agreement. On November 9, 2011, Star Fuel filed a Motion for Leave to Dismiss Counterclaims with Prejudice under Federal Rule of Civil Procedure 41(a)(2) and (c). On November 18, 2011, the Court granted Star Fuel's motion and dismissed the three counterclaims with prejudice.

---

[2]The only attorney's fees plaintiff is seeking based upon the Settlement Agreement are its attorney's fees incurred in relation to Star Fuel's counterclaims. Plaintiff is not seeking attorney's fees based upon the Settlement Agreement for any of its claims brought in this case.

The Supreme Court's decision in *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001) supplies the principles that control the interpretation of the term "prevailing party." In *Buckhannon*, the Supreme Court defined prevailing party as one who has been awarded some relief on the merits by the court. *See id.* at 603-04. The Supreme Court further found that there must be a "material alteration of the legal relationship of the parties." *Id.* at 604. Finally, the Supreme Court emphasized the need for a "judicial *imprimatur*" or "*judicial relief.*" *Id.* at 605-06.

Plaintiff asserts that it is entitled to recover attorney's fees related to its defense of Star Fuel's counterclaims under the Settlement Agreement. Specifically, plaintiff asserts that because the dismissal was with prejudice, it operated as a final adjudication on the merits of Star Fuel's counterclaims. Further, plaintiff asserts that because the Court ordered the dismissal, it bears the judicial imprimatur lacking in a voluntary dismissal without court involvement. Plaintiff, therefore, contends that the dismissal satisfies the *Buckhannon* test and renders plaintiff the prevailing party on Star Fuel's counterclaims.

Star Fuel contends that plaintiff is not entitled to recover attorney's fees for its defense of Star Fuel's counterclaims. Specifically, Star Fuel asserts that the payment of attorney's fees may be considered a condition upon which a court grants dismissal, and in this case, the Court did not make payment of plaintiff's attorney's fees a condition to dismissal. Additionally, Star Fuel asserts that plaintiff cannot be considered the prevailing party because the claims against it were voluntarily dismissed with prejudice. Star Fuel further asserts that should this Court deem the Settlement Agreement's fee-shifting provision applicable, any award of attorney's fees would be inequitable

and unreasonable because Star Fuel was awarded summary judgment on plaintiff's breach of settlement agreement claim.

Having carefully reviewed the case law, as well as the parties' submissions, the Court finds that plaintiff should be considered the prevailing party as to Star Fuel's counterclaims. In the case at bar, Star Fuel filed a motion to dismiss its counterclaims with prejudice pursuant to Rule 41(a)(2) and (c), and this Court entered an order dismissing the counterclaims with prejudice. This order of dismissal with prejudice clearly effects a material alteration of the legal relationship of the parties because it serves as a complete adjudication of the issues set forth in Star Fuel's counterclaims and acts as a bar to further action on its claims. Further, the Court finds that the Court's order of dismissal with prejudice also has the required judicial *imprimatur* as this Court had the discretion to approve or disapprove Star Fuel's motion and was the determining factor as to whether the counterclaims were dismissed.[3] Finally, the Court finds that an award of attorney's fees to plaintiff for the work performed in relation to Star Fuel's counterclaims would not be inequitable or unjust. As set forth above, plaintiff clearly is the prevailing party on Star Fuel's counterclaims. While Star Fuel was granted summary judgment on plaintiff's breach of settlement agreement claim, plaintiff

---

[3]The Court would note a number of courts have also ruled that a dismissal with prejudice under Rule 41(a)(2) renders the party against whom the claims were made the prevailing party. *See Claiborne v. Wisdom*, 414 F.3d 715, 719 (7th Cir. 2005) (finding defendant was prevailing party when claims were voluntarily dismissed under Rule 41(a)(2)); *Samsung Elecs. Co., Ltd. v. Rambus Inc.*, 440 F. Supp. 2d 495, 511 (E.D. Va. 2006) ("A Rule 41(a)(2) dismissal is a court order that materially alters the legal relationship between the parties. It is only granted after the court exercises its discretion, and thus bears the necessary judicial imprimatur. The necessary conclusion then is that the voluntary dismissal with prejudice in this case made Samsung the prevailing party".); *Capitol Records, Inc. v. Foster*, No. Civ. 04-1569-W, 2006 WL 4558154, at *4 (W.D. Okla. July 13, 2006) (finding plaintiffs' Rule 41(a)(2) voluntary dismissal with prejudice represented judicially sanctioned material alteration in legal relationship between parties and defendant was prevailing party); *Bryant v. MV Transp., Inc.*, 231 F.R.D. 480, 482 (E.D. Va. 2005) (finding that Rule 41(a)(2) has the required "judicial imprimatur" and "judicially sanctioned" relief).

prevailed on its alternative theory breach of implied contract claim and was awarded all of the damages requested - the same damages that plaintiff sought in relation to its breach of settlement agreement claim. The Court finds no inequity under these circumstances.

Therefore, the Court finds that plaintiff is entitled to an award of its reasonable attorney's fees incurred in relation to Star Fuel's counterclaims.

### 3. Overstaffing

Defendants contend that the amount of attorney's fees requested by plaintiff should also be reduced for excessive, redundant time. Specifically, Defendants assert that Michael Brooks' substantive work on plaintiff's appeal was unnecessary and resulted in an unnecessary expenditure of time and effort. Mr. Brooks was not one of the primary attorneys who worked on this case prior to the appeal, and Defendants assert that any of the primary attorneys could have written plaintiff's appellate briefs in less time and without incurring the unnecessary expense of Mr. Brooks while maintaining the same chances of success. Alternatively, Defendants contend such time should be reduced by 25% to account for overstaffing.

Plaintiff contends that its attorney's fees should not be reduced for alleged overstaffing. Specifically, plaintiff asserts that Mr. Brooks did significant legal research and briefing prior to the appeal in this case, including being primarily responsible for researching and drafting plaintiff's response to Star Fuel's renewed motion for judgment as a matter of law, a brief that involved virtually all of the issues that were raised on appeal. Plaintiff further asserts that Mr. Brooks' billing rate is lower than the rates of the primary attorneys referenced by Defendants. Plaintiff, thus, contends that its appellate briefs were drafted by its lowest-billing attorney who had the most Tenth Circuit experience and who was already familiar with the issues and law and that this strategy

resulted in lower fees than plaintiff otherwise would have incurred. Finally, in its motion, plaintiff

states that its attorneys engaged in a three-step discounting and apportionment process to arrive at

an appropriate lodestar figure and that the first step involved a pre-apportionment discount where

the attorneys discounted the fees incurred for particular entries in order to account for potentially

duplicative billing and time billed for discrete projects by summer clerks or attorneys not assigned

to the case.

Having carefully reviewed the parties' submissions, the Court finds the attorneys' fees

requested by plaintiff should not be reduced to account for overstaffing. Specifically, the Court

finds that Mr. Brooks' work on the appeal in this case was necessary and did not result in an

unnecessary expenditure of time and efforts. Mr. Brooks had greater appellate experience and was

familiar with the issues and the law as he drafted plaintiff's response to Star Fuel's renewed motion

for judgment as a matter of law, and his billing rate was lower than the primary attorneys in the case.

Additionally, the Court finds there is no need to reduce the time expended by plaintiff's counsel by

25% to account for overstaffing. The Court finds that plaintiff's pre-apportionment discount

adequately accounts for any overstaffing in this case.[4]

4. <u>Reasonableness of attorney's fees and need for any additional apportionment</u>

Under Oklahoma law, an award of attorney's fees must be reasonable. *See Finnell v.*

*Seismic*, 67 P.3d 339, 346 (Okla. 2003). Determination of a reasonable fee involves a two-step

process. First, the Court must calculate the lodestar by multiplying the number of hours reasonably

---

[4]In the pre-apportionment discount step, the total amount of attorney's fees was reduced from
$1,771,701.50 to $1,500,252.95, a reduction of $271,448.55, or 15.32% of the original fee total.

expended on the litigation by a reasonable hourly rate.[5]  *See id.*  The Oklahoma Supreme Court has

adopted "a strong presumption that the lodestar method, alone, will reflect a reasonable attorney

fee."  *Parsons v. Volkswagen of Am., Inc.*, 341 P.3d 662, 671 (Okla. 2014).  Second, the Court must

consider whether to adjust the lodestar based on the *Burk*[6] factors.  *See Finnell*, 67 P.3d at 346.

Those factors are:

> time and labor required; novelty and difficulty of the questions; skill
> requisite to perform the legal service; preclusion of other
> employment; customary fee; whether the fee is fixed or contingent;
> time limitations; amount involved and results obtained; experience,
> reputation and ability of the attorneys involved; risk of recovery;
> nature and length of relationship with the client; and awards in
> similar causes.

*Spencer v. Okla. Gas & Elec. Co.*, 171 P.3d 890, 895 (Okla. 2007).  "In all cases, the attorney fees

must bear some reasonable relationship to the amount in controversy."  *Parsons*, 341 P.3d at 667.

Additionally, as a general rule, Oklahoma law requires apportionment between fee-bearing

and non-fee-bearing claims.  *See Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d

1091, 1098 (Okla. 1996).  However, "a prevailing party can recover fees for that portion of his

attorney's work not expended solely in prosecuting a related [non-fee-bearing claim]."  *Transpower

Constructors, a Div. of Harrison Int'l Corp. v. Grand River Dam Auth.*, 905 F.2d 1413, 1423 (10th

Cir. 1990).  Thus, if fees devoted to prosecuting a non-fee-bearing claim would have been

necessarily incurred in connection with the fee-bearing claim alone, those fees are properly awarded

without any apportionment.  *Id.  See also Arnold Oil Props., L.L.C. v. Schlumberger Tech. Corp.*,

508 F. App'x 715, 716-17 (10th Cir. 2013) ("While apportionment is the rule, its bears an exception.

---

[5]Defendants do not dispute the hourly rate charged by plaintiff's attorneys.

[6]*State ex rel. Burk v. City of Okla. City*, 598 P.2d 659 (Okla. 1979).

If a court finds *all* of the time devoted to the alleged non-fee-bearing claim . . . "would have been necessarily incurred" in connection with a claim that *is* fee-bearing . . . , then apportionment is not required") (emphasis in original); *Travelers Indem. Co. v. Hans Lingl Anlagenbau Und Verfahrenstechnik GMBH & Co. KG*, 189 F. App'x 782, 788 (10th Cir. 2006) (holding that trial court properly declined to apportion fees awarded to prevailing defendant where defense to fee-bearing and non-fee-bearing claims was the same).

In this case, plaintiff's attorneys engaged in a three-step discounting and apportionment process to arrive at the lodestar figure of $924,332. At the first stage of the discounting and apportionment process, plaintiff's attorneys reviewed the time entries and discounted the fees incurred for particular entries in order to account for potentially duplicative billing, unsuccessful motion practice, time billed for discrete projects by summer clerks or attorneys not assigned to the case, and additional billable time that is otherwise not compensable. The cumulative effect of these reductions was to reduce the total amount of fees from $1,771,701.50 to $1,500,252.95, a reduction of $271,448.55, or 15.32% of the original fee total. At the second stage of the discounting and apportionment process, plaintiff's attorneys reviewed each time entry in an effort to apportion the remaining fees between the fee-bearing claims on which plaintiff prevailed – breach of implied contract and Star Fuel's counterclaims – and the non-fee-bearing claims. The cumulative effect of this stage of the process resulted in a further reduction of attorney's fees from $1,500,252.95 to $1,027,035.56. At the third stage of the discounting and apportionment process, plaintiff's attorneys discounted the fees by an additional 10% to account for any time that may have been spent solely on the related non-fee-bearing claim. After this 10% reduction, the total amount of fees plaintiff

seeks to recover is $924,332. This final amount represents 52.71% of the total fees incurred by plaintiff in this case.

Additionally, plaintiff retained Steven L. Barghols to provide his opinions regarding the reasonableness of the attorney fees that were incurred by plaintiff in this case.[7] Mr. Barghols has opined as follows:

> In my opinion, the method of apportionment used by HCCN and the total amount of attorney's fees apportioned to the compensable claims are reasonable. The total amount of attorney fees apportioned to the fee-bearing claims is consistent with the amounts that would reasonably be expected had each claim been prosecuted or defended individually, and without the inclusion of other non-compensable claims.
> Based upon my experience, the total amount of fees sought to be recovered by Musket pursuant to its pending Motion is entirely proportionate to the dollar amount of claims and risks involved in this litigation matter.
> In my opinion, both the discounting and apportionment process used by HCCN and the total amount of fees sought to be recovered by Musket in connection with its implied contract claim and Star Fuel's counterclaims are reasonable.

Affidavit of Steven L. Barghols, attached as Exhibit 4 to Plaintiff's Motion for Attorney's Fees, Related Nontaxable Expenses, and Expert Deposition Fees with Brief in Support, at ¶¶ 32, 34, 35.

Plaintiff contends that its requested amount of attorney's fees, $924,332, is reasonable under the facts and circumstances of the case. Further, plaintiff contends that the fees billed to plaintiff were reasonable and necessary to properly prosecute the claims asserted by plaintiff and to defend against the counterclaims asserted by Star Fuel. Specifically, plaintiff asserts that given the interrelated nature of plaintiff's claim for breach of implied contract and plaintiff's claims for breach of express contract, breach of settlement agreement, fraud, constructive fraud, and civil conspiracy,

---

[7]Defendants do not dispute the qualifications of Mr. Barghols to give his opinion in this case.

as well as the common core of facts underlying all of the claims, the overwhelming majority of fees incurred on the related non-fee-bearing claims were not for legal work performed solely in connection with those claims – the fees would have been necessarily incurred in the successful prosecution of plaintiff's implied contract claim alone. Plaintiff further asserts that it would not have prevailed on its implied contract claim without proving its fraud and constructive fraud claims.[8] Plaintiff also asserts that even if it had never asserted its claims for breach of express contract and breach of the settlement agreement, it would have been required to discover and present all of the facts related to the negotiation and execution of the Settlement Agreement in order to prove its constructive fraud claim. Additionally, plaintiff asserts that its civil conspiracy claim was founded on the same conduct that gave rise to plaintiff's breach of implied contract and fraud claims.

Further, plaintiff contends that the amount of attorney's fees that it seeks to recover is reasonably related to the amount in controversy and plaintiff's overall success in the litigation. The amount of damages plaintiff sought on its claim for breach of implied contract represents 51.52% of the total damages sought by plaintiff at trial, and the $1,631,700 that the jury awarded to plaintiff on its implied contract claim equals 79.44% of the total damages awarded to plaintiff against Defendants. Additionally, plaintiff contends that given that the result is what matters and that result cannot be described as anything but a resounding victory for plaintiff, the Court should not reduce its fees simply because plaintiff did not prevail on every contention in the lawsuit. Finally, plaintiff contends that consideration of the *Burk* factors confirms the reasonableness of the attorney's fees requested.

---

[8]On appeal, the Tenth Circuit determined that Star Fuel was equitably estopped from relying on the statute of frauds because the jury found that Star Fuel committed fraud and constructive fraud based on the same facts underlying plaintiff's claim for breach of implied contract.

Defendants contend that plaintiff's attorney's fees must be apportioned to prevent an unjust and unreasonable assessment. Specifically, Defendants assert that a court is required to apportion attorney fees between fee-bearing and non-fee-bearing claims and should employ a reasonable method of determining which fees are attributable to which claims, even if they are considered to be closely related. Defendants further assert that Star Fuel obtained summary judgment on plaintiff's breach of contract claim and an award of attorney's fees to plaintiff, on a claim it lost on summary judgment, would virtually negate Star Fuel's judgment and result in a windfall to plaintiff, which is contrary to the policy behind awarding attorney's fees. Defendants also assert that plaintiff should not recover any fees for its attorneys' work in defending against Star Fuel's Motion for Partial Summary Judgment, including the filing of its Motion for Reconsideration and Motion for Leave to Amend, both of which were denied, and its fees should be reduced by such amount. Additionally, Defendants assert that permitting plaintiff to recover attorney's fees for its fraud claims and its unfair competition claims would be unjust and unreasonable as Oklahoma law does not permit attorney's fees for fraud claims and there is no statutory or contractual basis to award fees for an unfair competition claim. Defendants further assert that plaintiff is entitled to no fees for its civil conspiracy, tortious interference and violation of the Computer Fraud and Abuse Act ("CFAA") claims because the jury rejected plaintiff's civil conspiracy claim and the Court granted Star Fuel judgment as a matter of law on plaintiff's tortious interference and violation of the CFAA claims. Finally, in light of the circumstances, Defendants contend that an additional reduction of 25% would be appropriate.

Having carefully reviewed the parties' submissions, and particularly the detailed billing records, and having considered the *Burk* factors, the Court finds plaintiff's method of apportionment

and three-step discounting and apportionment process are appropriate and have resulted in a reasonable amount of attorney's fees. Specifically, the Court finds that because the vast majority of the time spent in relation to plaintiff's breach of contract and breach of settlement agreement claims would have been necessarily incurred in the successful prosecution of plaintiff's breach of implied contract claim alone, an award of attorney's fees for this time is reasonable and appropriate. However, the Court finds that any award of attorney's fees for the time plaintiff's attorneys spent in relation to Star Fuel's Motion for Partial Summary Judgment, which solely involved plaintiff's breach of contract claim, is not reasonable or appropriate in that the time spent on this matter would not have been necessarily incurred in the prosecution of plaintiff's breach of implied contract claim alone. The Court, therefore, finds that plaintiff's attorney's fees should be reduced by $34,819.22, resulting in an award of $889,512.78. The Court also finds that the time spent in relation to plaintiff's fraud and constructive fraud claims would have been necessarily incurred in the successful prosecution of plaintiff's breach of implied contract claim alone, as a showing of fraud was required for a finding that Star Fuel was equitably estopped from raising the statute of frauds as a defense, and, thus, an award of attorney's fees for this time is reasonable and appropriate. Further, the Court finds the three-step discounting and apportionment process resulted in an extremely reasonable amount of attorney's fees. The Court also finds that the amount of attorney's fees bears a reasonable relationship to the amount in controversy, particularly noting the amount the jury awarded to plaintiff on its implied contract claim equals 79.44% of the total damages awarded to plaintiff against Defendants. Finally, the Court finds that none of the *Burk* factors justify any upward or downward adjustment to the lodestar amount in this case.

Accordingly, the Court finds that plaintiff is entitled to an award of attorney's fees in the amount of $889,512.78.

B.     Related nontaxable expenses

Plaintiff also seeks to recover related nontaxable expenses[9] in the amount of $80,691.38 against Clifton and Selph.  Federal Rule of Civil Procedure 54(d)(2) allows a party to move for an award of related nontaxable expenses "when recoverable under governing law incident to the award of fees."  Advisory Committee's Note to 1993 Amendment to Fed. R. Civ. P. 54(d)(2).  Under Oklahoma law, "parties may agree by contract to pay for litigation expenses."  *Whitehorse v. Johnson*, 156 P.3d 41, 48 (Okla. 2007).

Plaintiff asserts that in their personal guarantees, Clifton and Selph agreed to reimburse plaintiff for attorney's fees, costs, and other expenses incurred in the successful prosecution of plaintiff's claim for breach of implied contract.  Specifically, plaintiff seeks to recover the following related nontaxable expenses: (1) non-deposition-related expert witness fees for David Payne in the amount of $42,850.50, (2) trial graphics/technical trial support in the amount of $18,703.43, (3) computer legal research in the amount of $13,835.24, (4) travel expenses in the amount of $2,348.56, (5) shipping and postage fees in the amount of $1,651.73, (6) in-town meals in the amount of $1,018.56, and (7) courier fees in the amount of $550.00.  Plaintiff asserts that attorneys in the Oklahoma City community routinely itemize and bill these types of expenses to their clients in addition to their normal hourly rates and that courts have found each of these categories of expenses to be recoverable under contracts or statutes authorizing the recovery of litigation

---

[9]These "related nontaxable expenses" are litigation expenses, other than attorney's fees, that are not taxable as costs under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920.

expenses. Further, plaintiff asserts that it is seeking to recover only those expenses that were reasonably and necessarily incurred to prosecute its breach of implied contract claim. Additionally, plaintiff states that the amounts listed above represent only 51.52% of the total expenses incurred in each category.

In their response, Clifton and Selph contend that plaintiff is not entitled to recover $21,475.10 for these nontaxable expenses because it has failed to provide proper documentation substantiating the travel, meals, computer research, and courier fees. Additionally, Clifton and Selph contend that plaintiff has failed to provide the requisite documentation substantiating the requested expert fee. Clifton and Selph also contend that plaintiff achieved only mixed success on its breach of implied contract and tort claims and it would be inappropriate to tax the entire amount of Mr. Payne's fees on these issues and that plaintiff's expert witness fee request should be reduced by 50% to reflect the actual success on said claims.

Having carefully reviewed the parties' submissions, the Court finds that the Affidavit of William A. Johnson and the exhibit to that affidavit listing each item of nontaxable expenses sought is proper documentation substantiating the travel, meals, computer research, and courier fees. This Court's Local Civil Rules provide that an affidavit is proper support for a request for costs and attorney's fees. *See* LCvR 54.1 ("The prevailing party shall provide either receipts, documents, or <u>an affidavit</u> in support of the requested itemized costs.") (emphasis added); LCvR 54.2 (requiring that the brief in support of the motion for attorney's fees should be accompanied by an affidavit). Therefore, the Court finds that plaintiff is entitled to recover the $21,475.10 for travel, meals, computer research, and courier fees. Additionally, the Court finds that the Affidavit of William A. Johnson also provides proper documentation substantiating the requested expert fee for Mr. Payne.

Further, because plaintiff has already reduced Mr. Payne's fees by nearly 50% to account for only those expenses that were reasonably and necessarily incurred to prosecute its breach of implied contract claim and because plaintiff was fully successful on its breach of implied contract claim, the Court finds that Mr. Payne's expert fees should not be reduced any further.

Accordingly, the Court finds that plaintiff is entitled to recover related nontaxable expenses in the amount of $80,691.38 against Clifton and Selph.

### C.    Deposition-related expert witness fees

Federal Rule of Civil Procedure 26(b)(4)(E) provides, in pertinent part:

> Unless manifest injustice would result, the court must require that the party seeking discovery:
> (i)    pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) . . . .

Fed. R. Civ. P. 26(b)(4)(E)(i).  Rule 26(b)(4)(A) relates to depositions of an expert who may testify in a case.  *See* Fed. R. Civ. P. 26(b)(4)(A).

Plaintiff asserts that it is entitled under Rule 26(b)(4)(E) to reimbursement from Defendants for the fees billed by Gavin Manes and David Payne in connection with their deposition preparation and attendance.  Plaintiff states that Dr. Manes billed a total of $5,650 for deposition time, preparation time, and travel time, and Mr. Payne billed a total of $7,491.25 for deposition time and preparation time.  Further, in his affidavit, Mr. Johnson states that Dr. Manes billed at a rate of $175 per hour for his travel time, $300 per hour for his deposition preparation time, and $500 per hour for time spent testifying at his deposition, and Mr. Payne billed at a rate of $325 per hour for time spent preparing for and testifying at his deposition.  Plaintiff contends that the rates and total fees charged by these experts are reasonable given the experts' experience, the nature of their testimony, the volume of materials they had to review, and the complexity of the case.

Defendants contend that plaintiff is not entitled to recover for its experts' preparation time for their depositions. Additionally, Defendants contend Dr. Manes is not entitled to recover his full rate for travel. Finally, Defendants contend that plaintiff has provided no evidence to support its interpretation of a reasonable rate for Dr. Manes and Mr. Payne and plaintiff's request should, therefore, be denied or, alternatively, an hourly rate of $200 is appropriate for both experts.

Courts are split on whether a party can recover for the time spent by its expert in preparing for his deposition. The majority of courts have found that preparation time is compensable. *See* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2034 (3d ed. 2010). Some of the courts allowing for compensation for preparation time, however, provide a caveat that time spent by the expert preparing the attorney who retained him is not compensable. Having carefully reviewed the case law, the Court finds the more persuasive authority is the majority of courts that allow compensation for preparation time, but the Court is also persuaded that preparation time spent by the expert in preparation with the attorney who retained him should not be compensated.

Accordingly, the Court finds that plaintiff is entitled to recover Dr. Manes' and Mr. Payne's preparation time, with the exception of the 1.5 hours Mr. Payne spent on August 6, 2012 meeting with Mr. Elder, Mr. Johnson, and Mr. Brockman to prepare for his deposition.

Regarding Dr. Manes' rate for travel, Defendants are mistaken that plaintiff is seeking to recover his full rate for travel. As set forth in Mr. Johnson's affidavit, as well as in Exhibit D to his affidavit, Dr. Manes charged a reduced rate ($175.00) for his travel time. Finally, having reviewed the parties' submissions, and particularly Mr. Johnson's affidavit, the Court finds that the rates charged by Dr. Manes and Mr. Payne are reasonable. The Court would particularly note that

Defendants' computer forensic expert charged the same rates as Dr. Manes and Defendants' forensic accounting expert billed at a higher rate than Mr. Payne.

Accordingly, the Court finds that plaintiff is entitled to recover deposition-related expert witness fees in the amount of $12,653.75 against Defendants.

III.    Conclusion

For the reasons set forth above, the Court GRANTS plaintiff's Motion for Attorney's Fees, Related Nontaxable Expenses and Expert Deposition Fees [docket no. 408] and AWARDS plaintiff attorney's fees in the amount of $889,512.78 against Defendants, related nontaxable expenses in the amount of $80,691.38 against Clifton and Selph, and deposition-related expert witness fees in the amount of $12,653.75 against Defendants.

**IT IS SO ORDERED this 14th day of March, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE